# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| **RAFAEL TREVINO,** et. al., | |
| Plaintiff, | No. 11-CV-4015-DEO |
| v. | |
| **THOMAS CLAYTON SCHROEDER II,** et. al., | Memorandum and Opinion Order |
| Defendant. | |

_____

## I. INTRODUCTION

On July 12, 2011, Plaintiffs, Rafael and Julia Trevino, on behalf of themselves and their minor children, A.T. (age 12), D.T. (age 11), and E.T. (age 9), filed a complaint against Defendants with this Court. The complaint alleges eight causes of action: (1) hate crime under Iowa Code 729A.2, (2) assault, (3) battery, (4) false imprisonment, (5) malicious prosecution, (6) abuse of process, (7) civil rights violations, and (8) conspiracy to violate Plaintiffs' civil rights. Docket No. 13, 11-13.

Currently before this Court is Defendant Steven Schroeder, Tyson D. Bettin, Brad Jacobson, Brandi Drost, and Jeff Roth's (hereinafter, "movants") motion to dismiss

Plaintiffs' claims based on three grounds: (1) lack of jurisdiction based on Plaintiffs' lack of access to U.S. courts, (2) failure to file a right to sue letter as required under the Equal Employment Opportunity Commission (EEOC) and/or the Iowa Civil Rights Commission (ICRC), and (3) failure to state a claim on which relief can be granted. Docket Nos. 24 and 25.

**II. FACTS AS ALLEGED IN PLAINTIFFS' FIRST AMENDED COMPLAINT**

Plaintiffs "are married adult Hispanic residents of Hidalgo County, Texas" and "are of Mexican origin." Id. at 2. All of the Defendants are Caucasian. Id. In June of 2009, Rafael Trevino moved to Wall Lake, Iowa, as a migrant farm worker detasseling corn on local farms. Julia Trevino, Rafael Trevino's wife, and their children remained in Texas. Id. at 4-5.

"On the evening of August 3, 2009, Rafael Trevino and another member of" the detasseling "crew went to a bar called Doc's Place . . . played pool, and then returned" to their apartments, "two blocks away." Id. Upon returning home, Mr. Trevino ate dinner and then "went outside to his back yard to call his wife . . . ." Id. Just prior to dialing her number, "a white pickup truck with a crew cab [sped] into his back

2

yard and [knocked] over a barbeque grill." Id. "One or more of the Defendants . . . including[,] without limitation Tommy Schroeder, Steven Schroeder, and Brad Jacobson, exited the white truck, immediately grabbed Mr. Trevino, and forced him into the bed of the truck" where Mr. Trevino was forcibly held face down and driven "to a remote location on the outskirts of Wall Lake, Iowa." Id. at 4-5.

Plaintiffs allege, "[o]n information and belief, the group of people at the remote location included all or most" of the following Defendants: Tommy Schroeder, Steven Schroeder, Brad Jacobson, DeRae A. Bettin, Tyson D. Bettin, Brandi Drost, and Jeff Roth. Id. at 5. Once at the remote location, one or more of the Defendants dragged Mr. Trevino from the bed of the truck and then severely beat him, "repeatedly . . . striking him with their fists and kicking him." Id. While the beating was ongoing, "[s]ome members of the group shouted 'kill him' and 'f**king Mexican,'" as Mr. Trevino drifted in and out of consciousness. Id. As a result of the beating, Mr. Trevino suffered a broken nose, broken rib, cuts, bruises, swelling all over his body, and blood in his urine due to blows to his genitals and kidneys. Id. at 5-6. Since suffering his injuries, Mr. Trevino "has required

3

repeated hospital treatment." Id. at 6.

According to Plaintiffs, after the brutal beating of Mr. Trevino, Defendant Tommy Schroeder contacted Defendant Helmich, a personal friend of the Schroeder family. Id. at 8. Defendant Helmich is also Chief of Police of the Lake view Police Department, which serves two municipal corporations: Wall Lake and Lake View, Iowa. Chief Helmich, in furtherance of covering up the actions of those who wrongfully beat the Plaintiff, told Tommy Schroeder to take Mr. Trevino from the remote sight back to Doc's Place. Id. Tommy took Mr. Trevino back to Doc's and concocted a story to make it look as though he caught Mr. Trevino breaking into a pickup outside the bar, and, after attempting to apprehend Mr. Trevino, was forced to defend himself. Id. at 7.

After conversing with Tommy Schroeder via telephone, Chief Helmich dispatched "Officer A.W. Staples to the bar." Id. at 8. Officer Staples found Mr. Trevino under Tommy Schroeder's pickup truck in the alley behind Doc's Place. Id. Though Officer Staples "concluded . . . the crime scene had been staged," he nonetheless, in compliance with the expectations of Chief Helmich, filed criminal charges against Mr. Trevino and failed to investigate Mr. Trevino's report of

4

events or file charges against Tommy Schroeder or the others involved.  Id. at 8-9.

According to Plaintiffs, Officer Staples' decisions were contrary to the physical evidence, and "the witness statements" supporting Tommy Schroeder's version of events "were not credible."  Id. at 9.  On January 12, 2010, "Iowa prosecutors dismissed all criminal charges against Mr. Trevino . . . ."  Id.  Among other claims, Plaintiffs contend Chief Helmich and Officer Staples, acting under color of Iowa law and in their official capacities as employees of the Municipalities of Wall Lake and Lake View, "conspired with each other and with the other Defendants to violate" a number of Mr. Trevino and his family members' established rights.  Id. at 9-10.

## III. LACK OF SUBJECT MATTER JURISDICTION

The Movants argue the claims against them should be dismissed for lack of subject matter jurisdiction because "[i]t is difficult to know if the Plaintiffs are residents of the United States or entitled access to the Courts in the United States." This simply is not accurate. The Plaintiffs' complaint clearly alleges they are "residents of Hidalgo County, Texas," and, as Plaintiffs point out, it is a long

5

standing maxim that allegations in a complaint are to be accepted as true in the early stages of a proceeding. Mamot Feed Lot & Trucking v. Hobson, 539 F.3d 898, 901 (8th Cir. 2008).

Even assuming the compliant uses the term "resident" merely to signify that Hidalgo County, Texas, is where Plaintiffs live but are not "legal residents," foreigners can sue United States Citizens for events occurring on U.S. soil.[1] The basic diversity of citizenship statute gives a district court original jurisdiction over "all civil actions," including actions brought under state law, "where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States" or "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a). For purposes of the diversity statute "an alien admitted to the United States for permanent residence" is "deemed a citizen of the State in which such alien is domiciled." Id. Furthermore, under 28 U.S.C. § 1331, "district courts . . . have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of

---

[1] Under 28 U.S.C. § 1350, foreigners may even sue U.S. Citizens for events occurring outside of U.S. territory, if the U.S. Citizen's actions, or forbearance of action, violated a U.S. Treaty or international law.

6

the United States," regardless of a plaintiff's legal status, and so this Court clearly has original jurisdiction over Plaintiffs' civil rights claims.

The federal jurisdiction statutes create the only sensible result: if district courts were not allowed to hear claims brought by resident aliens or illegal aliens, the kind of heinous conduct here alleged could be undertaken without impunity; such a result would be contrary to basic principles of human dignity, fairness, and justice. **<u>Therefore, the Movants' motion to dismiss on this ground is denied</u>**.

## IV. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

The Movants argue the complaint fails to provide a right to sue letter from the EEOC or the ICRC. Docket No. 25, 2 and Docket No. 25-1, 3. The federal legislation establishing the EEOC and the Iowa State legislation establishing the ICRC require potential plaintiffs to exhaust certain administrative remedies prior to seeking relief from a court for certain types of claims. In this case, neither commission has any authority in relation to any of the Plaintiff's claims.

The EEOC as its name suggests, "is responsible for enforcing federal laws that make it illegal to discriminate against a job applicant or employee." *About EEOC*, U.S. Equal

Employment Opportunity Commission, http://www.eeoc.gov/eeoc/, last visited October 17, 2011.  In order to bring a Title VII employment discrimination claim in a district court, an employee must file a right to sue letter from the EEOC.  This letter indicates that administrative review of the employee's claim has been exhausted.  Frazier v. Vilsack, 419 Fed.Appx. 685, 689-90 (8th Cir. 2011).  Plaintiffs neither contend any Defendant was their employer, nor that Defendants' actions violated Title VII, and, **therefore, a right to sue letter from the EEOC is simply not required in this case, and Movants' motion to dismiss in relation thereto is denied**.

The ICRC was created under the Iowa Civil Rights Act of 1965 (hereinafter, the Act).  Under the Act, a person claiming to be aggrieved by certain "unfair or discriminatory practice[s] must initially seek . . . administrative relief by filing a complaint with the commission."  Iowa Code Ann. § 216.5.  Unfair and discriminatory practices are defined as "those practices specified as unfair or discriminatory in sections 216.6, 216.6A, 216.7, 216.8, 216.8A, 216.9, 216.11, and 216.11A" of the Iowa Code.  Iowa Code Ann. § 216.16(1).  Generally, these Sections refer to unfair employment practices, wage discrimination, unfair or discriminatory

practices in providing public accommodations, unfair or discriminatory practices related to housing, unfair and discriminatory practices in providing education, and unfair credit practices. **The Plaintiffs do not make claims in relation to these issues and the provisions of the Act simply do not apply. Therefore, Movants' motion to dismiss in relation thereto is denied**.

**V. FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED**

**A. Standard**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) provides that a Defendant may assert a defense for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 8(e) requires courts to construe pleadings "so as to do justice." Fed. R. Civ. P. 8(e).

In <u>Bell Atlantic Corporation v. Twombly</u>, the Supreme Court revisited the standard for a 12(b)(6) motion. 550 U.S. 544 (2007). The Court upheld the traditional concept of notice pleading, whereby the primary purpose of pleading in the federal system is to give a Defendant "'fair notice what the claim is and the grounds upon which it rests.'" 550 U.S.

9

at 544 (quoting Conley v. Gibson, 355 U.S. 41 (1957)).  A complaint need not include detailed factual allegations but "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Id. "Facts and allegations must be enough to raise a right to relief above the speculative level . . . on the ASSUMPTION THAT ALL THE allegations in the complaint are true (even if doubtful in fact)." Id.  Overall, the Court did not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570.

In Ashcroft v. Iqbal, the Court elaborated on its ruling in Twombly, noting two principles underlying its decision. 129 S. Ct. 1937, 1950-51 (2009).  First, a court need not accept allegations which constitute mere legal conclusions as true. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing 550 U.S. at 556).  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. (citing 550 U.S. at 556).[2]

---

[2] Though attorneys, when their client's needs demand, are apt to portray the Supreme Court's rulings in Twombly and Iqbal as a sea change in motion to dismiss jurisprudence, a decision made after Twombly, Erickson v. Pardus, clearly

10

**B. Analysis**

The Movants contend Plaintiffs' complaint "sets forth no specific facts or acts in relation to Defendants Bettin, Drost, and Roth." Movants' contention is not accurate. Plaintiffs allege that "[o]ne or more" of the Defendants, including Bettin, Drost, and Roth, were present when Mr. Trevino was taken from the back of his home. Docket No. 13, 4. Plaintiffs also allege, "[o]n information and belief," that "all or most" of the Defendants, excluding Officer Staples, Chief Helmich, and the Municipalities of Wall Lake and Lake View, Iowa, were present at the remote location where Mr. Trevino was allegedly beaten. Id. at 5. Furthermore, as

---

reiterates the basic principles of liberal pleading in federal district courts. 551 U.S. 89 (2007). The Court noted,
> Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.' *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 . . . (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 . . . (1957)). In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. (citations omitted).

Plaintiff's response indicates, their complaint alleges facts as to Defendants Bettin, Drost, and Roth's involvement at paragraphs 3, 20, 21, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 41, 42, 59, 67, 68, 69, 70, 71, 72, and 74 of the their complaint. Docket No. 27, 2.

While the Plaintiffs do not allege that Bettin, Drost, and Roth were definitely present for all events, "evaluation of a complaint . . . is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Iqbal, 129 S. Ct. at 195). As previously noted, Mr. Trevino alleges that he was nabbed from his home at night, held face down in the back of a pickup, driven to a remote location, dragged from the pickup, and then beaten as he drifted in and out of consciousness while surrounded by the glare of his assailants' vehicles' head lights. Assuming the facts alleged as true, it is not surprising that Mr. Trevino cannot recite, in detail, each minute event which happened to him that night, nor is it surprising that he cannot remember every person that was present. When considering a motion to dismiss for failure to state a claim, a court must take into account a plaintiff's

"limited access to crucial information." U.S.A. v. Dico, 2011 WL 677448 (S.D. Iowa 2011). When a fact is in the control of the defendant(s) but can be reasonably inferred from a plaintiff's allegations, specific allegations are not necessary. See Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 598 (8th Cir. 2009) ("If plaintiffs cannot state a claim without pleading facts which tend systematically to be in the sole possession of defendants, the remedial scheme . . . will fail, and . . . crucial rights . . . will suffer.").

In addition, the Plaintiffs' response to Movants' motion to dismiss notes that Federal Rule of Civil Procedure Appendix Form 12, **Complaint for Negligence when the Plaintiff Does Not Know Who is Responsible**, provides the wording by which a plaintiff can state a claim showing he is entitled to relief under circumstances similar to what are at issue here. The Plaintiffs' brief does, in fact, employ the kind of wording suggested in the Form, and, this Court is persuaded that if Congress determines this type of language sufficient, this Court neither wants to nor is in a position to disagree.

The standard under Twombly and Iqbal is one of plausibility not probability, and it is enough that Mr. Trevino alleges Defendants Bettin, Drost, and Roth were

13

involved in some or all of the stages of the events on which Plaintiffs' complaint is based; under the circumstances alleged, it is not necessary for and would be unreasonable to require Plaintiffs to plead their exact role. If movants have been wrongfully accused, later stages of civil procedure are better suited to vindicate them. **Therefore, Movants' motion to dismiss for failure to state a claim on which relief can be granted is denied**.

**IT IS SO ORDERED** this 28th day of November, 2011.

*Donald E. O'Brien*
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa